(No. 36010.—

The People ex rel. Jordan Company et al., Appellants, vs. The Village of Forest View, Appellee.

*Opinion filed Jan. 20, 1961.—Rehearing denied March 27, 1961.*

Arvey, Hodes & Mantynband, of Chicago, (Barnet Hodes, and J. Herzl Segal, of counsel,) for appellants.

Louis Ancel, Jack M. Siegel, and Robert E. Grundin, all of Chicago, (Ancel, Siegel & Stonesifer, of counsel,) for appellee.

Mr. Justice Bristow delivered the opinion of the court:

This is a *quo warranto* proceeding instituted in the circuit court of Cook County by certain property owners seeking to declare invalid an ordinance of the village of Forest View which purported to annex certain territory to that municipality. The contention of plaintiffs is that the annexation proceedings upon which the ordinance was based were fatally defective because the initiating petition was not

signed by a majority of the electors residing in the territory sought to be annexed, as required by section 7—2 of the Revised Cities and Villages Act.

Section 7—2 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1951, chap. 24, par. 7—2) requires an annexation petition to be signed by a majority of the owners of record of land in such territory and also by "a majority of the electors, if any, residing in such territory." The petition in question was admittedly signed by a majority of the land-owners of record. The principal matter in dispute is whether the petition was also signed by a majority of the electors residing in the territory.

The essential facts are not in dispute. There were, at the time of the filing of the petition on September 22, 1952, only three registered voters in the territory, all of whom signed the petition. The allegations of the complaint, which for the purposes of this appeal are assumed to be true, stated that, in addition to these three registered voters, there were residing in the territory five other persons, each of whom was a citizen of the United States of the age of 21 years or over, who had resided in the State of Illinois one year, in the county of Cook 90 days, and in the election district embracing the affected territory 30 days next preceding the filing of the petition, but who were not registered under the Election Code. None of these five persons signed the petition.

The principal question for decision is, therefore, the proper construction of the word "electors" within the meaning of the statutory provision requiring the annexation petition to be signed by a majority of the electors residing in the territory. Plaintiffs maintain that all persons are electors who meet the qualifications set forth in section 3—1 of the Election Code (Ill. Rev. Stat. 1951, chap. 46, par. 3—1) of being citizens of the United States and of having resided in the State one year, in the county 90 days, and in the election district 30 days, and contend that since, under this interpretation, the petition, being signed by only three of the

eight electors, did not meet the statutory requirements, and that the annexation proceedings held thereunder were void. Defendant contends, and the trial court held, that, in addition to these requirements, a person is not an elector and is not eligible to sign an annexation petition, unless he is also a registered voter, in view of section 5—1 of the Election Code (Ill. Rev. Stat. 1951, chap. 46, par. 5—1), which provides that, aside from exceptions not here involved, it is unlawful for a resident of a county having a population of at least 500,000 to vote at any primary, general, special, or municipal election unless he is registered.

Defendant relies upon the definitions section of the Revised Cities and Villages Act (Ill. Rev. Stat. 1951, chap. 24, par. 1—2), which defines "electors" as "persons qualified to vote for elective officers at municipal elections." This definition, however, is obviously inapplicable to the present question, for, since we are dealing with territory that was not within the corporate limits of any municipality, none of the residents involved, whether registered voters or not, would be qualified to vote for elective officers at municipal elections. Moreover, the argument assumes that registration is a qualification for voting rather than simply a means of assuring that only qualified persons will be permitted to cast their ballots on election day.

Section 3—1 of the Election Code (Ill. Rev. Stat. 1951, chap. 46, par. 3—1) provides that: "Every person having resided in this state one year, in the county ninety days, and in the election district thirty days next preceding any election therein, and who shall be a citizen of the United States, above the age of twenty-one years, shall be entitled to vote at such election." This section is part of article 3 of the Election Code, which article is entitled "Qualification of Voters." This title is part of the law as enacted by the General Assembly and is not a mere editorial insertion.

Section 5—1 of the Election Code (Ill. Rev. Stat. 1951, chap. 46, par. 5—1) reads as follows: "Except as herein-

after provided, it shall be unlawful for any person residing in a county containing a population of 500,000 or more, to vote at any primary, general or special or municipal election, except at elections for park commissioners, unless such person is at the time of such election a registered voter under the requirements of this Article 5 or is exempt under Section 5—29.01 from registration. Provided, that this Article 5 shall not apply to electors residing in cities, villages, and incorporated towns in this State which have adopted or are operating under Article 6, 14 and 18 of this Act, or to electors voting pursuant to Article 20 of this Act."

The foregoing section is phrased as a prohibition against voting in certain elections unless the voter is registered. It neither says, nor purports to say, that an unregistered person is ineligible to sign a petition for annexation under section 7—2 of the Revised Cities and Villages Act. There is nothing in section 5—1 of the Election Code to indicate that it was intended to prescribe registration as a prerequisite for anything other than the act of voting in certain elections.

While the exceptions to the registration requirements of section 5—1 of the Election Code are inapplicable in that none of the five unregistered persons comes within the terms of any of the exceptions, we think that these exceptions have some relevancy to the present question in that they illustrate rather clearly that a distinction is to be drawn between an elector and a registered voter, and that registration is not a prerequisite to being considered an elector. Section 5—1 provides that article 5, requiring registration as a condition to voting, shall not apply "to *electors* voting pursuant to Article 20 of this Act." Article 20 is entitled: "Voting by Absent *Electors* in Military or Naval Service." The first section of said article 20, section 20—1 (Ill. Rev. Stat. 1951, chap. 46, par. 20—1) describes persons entitled to vote thereunder as: "Any person in the military or naval service of the United States, *qualified as an elector under Article 3*

*of this Act,* * * *." (Emphasis supplied.) This clearly indicates that an elector is to be regarded as one who meets the qualifications of article 3 of the Election Code, and that one need not be a registered voter in order to be an elector.

The qualifications of electors prescribed in section 3—1 of the Election Code are identical with those contained in section 1 of article VII of the constitution of 1870 as modified by the nineteenth amendment to the constitution of the United States. Registration laws have been upheld in this State on the theory that they do not add an additional qualification to those prescribed by the constitution, but that they merely provide a mode of ascertaining and determining whether one possesses the necessary qualifications. (*People ex rel. Grinnell* v. *Hoffman,* 116 Ill. 587, 611.) Modern permanent registration laws were enacted for the purpose of preventing fraud in elections and are a substitute for the older system whereby one who was not personally known by the judges of election to possess the required qualifications and whose right to vote was challenged at the polls was required to make an affidavit of qualification. If article 5 of the Election Code, instead of requiring registration, simply prohibited a person from voting unless he signed an affidavit in the presence of the judges and clerks of election that he possessed the qualifications of an elector, it could hardly be seriously contended that such a requirement was a prerequisite to eligibility for signing an annexation petition. We can see no more reason, in the absence of any clear expression that such was the intention of the legislature, to construe a statute prohibiting one from voting in certain elections without registering as prohibiting unregistered persons from signing an annexation petition. Such a construction would be an unwarranted extension of the terms of the registration statute.

We conclude that the term "electors" as used in section 7—2 of the Revised Cities and Villages Act means persons

who are citizens of the United States and who have resided in the State of Illinois for one year, in the county for 90 days and in the election district for 30 days, and that the trial court erred in holding that only persons registered under the Election Code were eligible to sign the annexation petition.

Defendant contends that, irrespective of the trial court's error, the judgment should be affirmed on the ground that plaintiffs are barred by *laches,* acquiesence, and the Statute of Limitations; that this *quo warranto* proceeding cannot be used to review the determination of the county court in the annexation proceeding; and that the granting of a judgment of ouster would be against the public interest.

The claim that the action is barred by the Statute of Limitations was first raised by defendant's motion to vacate the order granting leave to file the complaint and was renewed in the answer as an affirmative defense. The record does not show that this question was ever specifically ruled upon by the trial court. It has been held that the Statute of Limitations does not apply to *quo warranto* proceedings involving public rights, and that a *quo warranto* proceeding to test the organization of a municipal corporation concerns public rights. (*Catlett* v. *People,* 151 Ill. 16.) This same principle should apply to a proceeding involving the validity of the annexation of territory to a municipality. While it is true that the private rights of plaintiffs are also involved, in that they, as owners of property in the disputed territory, have a personal interest in addition to that of members of the public generally, this does not detract from the proposition that the proceeding is one involving public rights. We conclude, therefore, that the Statute of Limitations is not a bar to this proceeding.

Defendant's contention that this *quo warranto* proceeding cannot be used to review the determination of the county court in the annexation proceeding is beside the point. Plaintiffs do not purport to review the determination of the

county court. Rather, their claim is that the county court lacked jurisdiction to make any determination, because the failure of the petition to comply with the statutory requirements rendered it insufficient to confer jurisdiction upon the county court. The statutory requirements of the petition are jurisdictional, and the lack of jurisdiction on the part of the county court can be asserted in a *quo warranto* proceeding. See *People* v. *Fairfield School District,* 397 Ill. 233; *People* v. *Zoller,* 337 Ill. 362; *People* v. *North Fork Drainage District,* 331 Ill. 68.

The questions of *laches,* acquiesence, and public interest will be considered together, since, in our view, they are so closely related as to be virtually inseparable. In contending that plaintiffs are barred by *laches* and acquiesence, defendant relies most heavily on our decision in *People ex rel. Lindsey* v. *Board of Education,* 3 Ill.2d 159, in which the doctrine of *laches* was invoked to bar a *quo warranto* action challenging the validity of the organization of a community unit school district. It is clear from our opinion in the *Lindsey case* that what caused the action to be barred was neither the lapse of time nor the acquiesence of the plaintiffs, but, rather, the fact that, during the period of delay and acquiesence certain action had been taken by the district and certain conditions had developed whereby great inconvenience and public detriment would result from a judgment of ouster. The undisputed facts in that case showed that, during the period of delay, some 33 school buildings had been disposed of, and that a judgment of ouster would create a completely chaotic condition in that it would leave 636 elementary students without school facilities or funds to provide them and would leave 230 high school students without transportation or funds to pay their tuition. The basis for the decision was that the granting of the relief prayed for would be manifestly against the public interest, and the doctrine of *laches* was invoked for that reason.

If there are any factors in the present case comparable to those which gave rise to the application of the doctrine of *laches* in the *Lindsey case,* they are not properly before us on this appeal. Defendant's answer presented several affirmative defenses, among them that plaintiffs' claim was barred by *laches* and acquiesence, and that the granting of the relief prayed for would be against the public interest and would result in great inconvenience and public detriment. Plaintiffs' reply, while admitting some of defendant's factual allegations with respect to these affirmative defenses, denied others, and presented counter allegations, and, with respect to others, alleged a lack of sufficient knowledge to either affirm or deny. The trial court heard no evidence but decided the case solely on the basis of the pleadings and the documents filed in connection therewith. The trial court did not rule specifically upon any of the affirmative defenses nor did it make any finding that the granting of the relief prayed for would result in great inconvenience and public detriment. The only basis for the decision appearing in the judgment order is the finding that only persons duly registered under the Election Code were eligible to sign the annexation petition, and that the annexation proceedings were valid. We do not understand defendant to contend that a general finding in the judgment order that "the issues herein are with the Defendant and against the Plaintiffs," is equivalent to a specific decision in favor of defendant with respect to the question of *laches* and the public interest. Since the pleadings presented disputed questions of fact with respect to these matters, no such decision could have been made by the court without the taking of evidence.

It appears from the record that the trial court decided the case solely upon the erroneous theory that only persons registered under the Election Code were eligible to sign the petition for annexation and did not hear any evidence on disputed questions of fact and did not rule on any of the other issues raised by the pleadings. The judgment is there-

fore reversed and the cause remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*