731 N.E.2d 1282 (2000)
314 Ill. App.3d 764
247 Ill.Dec. 274
In re D.E. and K.E., Alleged Neglected Minors
The People of the State of Illinois, Petitioner-Appellant,
v.
Natalie Ellis, Respondent-Appellee.
No. 4-99-0905.
Appellate Court of Illinois, Fourth District.
June 30, 2000.
Presiding Justice COOK delivered the opinion of the court:
The State appeals the order of the circuit court dismissing its neglect petition pursuant to section 2-14 of the Juvenile Court Act of 1987 (Juvenile Court Act) *1283 (705 ILCS 405/2-14 (West 1998)), which mandates that adjudicatory proceedings on such petitions must commence within 90 days of the date of service upon specified persons.
The State filed its petition on May 6, 1999, alleging the neglect of minors D.E. and K.E. Natalie Ellis is the mother of both children; James Ellis is alleged to be the father of D.E. and David Lockett is alleged to be the father of K.E. We herein refer to Natalie Ellis and James Ellis by both first and last name to avoid confusion.
Concurrently with the filing of the petition, notice of a shelter-care hearing set for May 7 went out to all parties: Natalie Ellis was personally given notice, as was a court-appointed guardian ad litem (GAL); notice to David Lockett was left in his front door; notice to James Ellis was apparently left at his mother's residence. On either this day or the next, attorneys for Natalie Ellis and Lockett appeared before the court, as did the GAL. At the conclusion of the shelter-care hearing, the trial court set the adjudicatory hearing for August 4, 1999. James Ellis did not appear and a summons was ordered to issue. Service of the summons was effectuated on June 25, directing him to appear on July 2, 1999. James Ellis appeared as summoned and was admonished, inter alia, that an adjudicatory hearing on the matter was set for August 4, 1999. August 4, 1999, also happened to fall precisely 90 days after filing of the original neglect petition and service of notice of the shelter-care hearing, a fact to which we shall return.
All was quiet until August 4, whereupon the case began a journey through our Sixth Judicial Circuit. First came counsel for James Ellis who, shortly after the case was called, filed instanter a handwritten motion to recuse the sitting judge, Judge Einhorn, as a matter of right. Judge Einhorn expressed her disapprobation of the timing of the motion, noting that James Ellis had been apprised of the proceedings since his July 2 admonishment. Judge Einhorn asked for objections; the attorney representing Natalie Ellis refused to waive her right to object to any future proceedings inasmuch as they might fall beyond the 90-day deadline contemplated by section 2-14 of the Juvenile Court Act. Judge Einhorn then granted the motion and directed the parties to immediately obtain a setting from Judge Clemons. The common-law record for that day contains only a subsequent notation from Judge Clemons: "The [c]ourt notes the [m]otion for [s]ubstitution of [j]udge filed this date. By agreement of all parties, cause continued to 8-19-99, at 2:00 p.m., in [c]ourtroom L."
August 19, 1999, came and the parties again appeared before Judge Clemons. The attorney for Natalie Ellis, however, filed instanter a motion to recuse Judge Clemons as a matter of right. Judge Clemons granted the motion, transferring the case to Judge DeLaMar, who apparently had time for a hearing that day. The parties proceeded to Judge DeLaMar's courtroom, where the GAL filed instanter a handwritten motion to recuse Judge DeLaMar as a matter of right. Judge DeLaMar transferred the cause to Judge Difanis. It was still the afternoon of August 19, 115 days after the petition was filed and notice of the shelter-care hearing had been sent.
Upon the arrival of the cause in Judge Difanis' court, the attorney for Natalie Ellis moved to dismiss the action pursuant to section 2-14(b) of the Juvenile Court Act. The trial court denied the motion and the State began introducing its evidence. The adjudicatory hearing was not concluded, however, and the court continued the case until October 27, 1999, more than two months later. On October 27, Natalie Ellis' attorney filed a written motion to dismiss, again claiming that the hearing had begun beyond the statutory deadline. Also attached were the affidavits of Natalie Ellis' attorney, James Ellis' attorney, and the GAL, all of whom averred that none of them had agreed to a continuance on August 4, despite the entry made by *1284 Judge Clemons. Upon further consideration, the court granted the motion and dismissed the cause. This appeal followed.
Section 2-14 of the Juvenile Court Act states:
"(a) Purpose and policy. The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety[,] and best interests of the minor and the effort to establish permanent homes for children in need. The purpose of this [s]ection is to insure that, consistent with the federal Adoption Assistance and Child Welfare Act of 1980, Public Law 96-272, as amended, and the intent of this [a]ct, the State of Illinois will act in a just and speedy manner to determine the best interests of the minor, including providing for the safety of the minor, identifying families in need, reunifying families where the minor can be cared for at home without endangering the minor's health or safety and it is in the best interests of the minor, and, if reunification is not consistent with the health, safety[,] and best interests of the minor, finding another permanent home for the minor.
(b) When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be commenced within 90 days of the date of service of process upon the minor, parents, any guardian[,] and any legal custodian, unless an earlier date is required pursuant to [s]ection 2-13.1. Once commenced, subsequent delay in the proceedings may be allowed by the court when necessary to ensure a fair hearing.
(c) Upon written motion of a party filed no later than 10 days prior to hearing, or upon the court's own motion[,] and only for good cause shown, the [c]ourt may continue the hearing for a period not to exceed 30 days, and only if the continuance is consistent with the health, safety[,] and best interests of the minor. When the court grants a continuance, it shall enter specific factual findings to support its order, including factual findings supporting the court's determination that the continuance is in the best interests of the minor. Only one such continuance shall be granted. A period of continuance for good cause as described in this [s]ection shall temporarily suspend as to all parties, for the time of the delay, the period within which a hearing must be held. On the day of the expiration of the delay, the period shall continue at the point at which it was suspended.
The term `good cause' as applied in this [s]ection shall be strictly construed and be in accordance with Supreme Court Rule 231(a) through (f). Neither stipulation by counsel nor the convenience of any party constitutes good cause. If the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) of this [s]ection, upon motion by any party the petition shall be dismissed without prejudice.
(d) The time limits of this [s]ection may be waived only by consent of all parties and approval by the court.
(e) For all cases filed before July 1, 1991, an adjudicatory hearing must be held within 180 days of July 1, 1991." 705 ILCS 405/2-14 (West 1998).
At issue, therefore, is the nature of the relationship between the mandate of section 2-14 of the Juvenile Court Act (705 ILCS 405/2-14 (West 1998)) and the statute governing the substitution of a judge as a matter of right (735 ILCS 5/2-1001(a)(2) (West 1998)). The issue is one of first impression in the Illinois courts. We note at the outset that, despite remarks in the court below, the issue is one of statutory authority, not "jurisdiction." In re C.S., 294 Ill.App.3d 780, 785-86, 229 Ill.Dec. 225, 691 N.E.2d 161, 164-65 (1998).

*1285 I. EVENTS THAT TRIGGER THE STATUTORY DEADLINE
We first consider upon which date the statutory deadline actually fell. Section 2-14(b) of the Juvenile Court Act prescribes that the adjudicatory hearing "shall be commenced within 90 days of the date of service of process upon the minor, parents, any guardian[,] and any legal custodian." 705 ILCS 405/2-14(b) (West 1998). Our courts have always assumed that "service of process" means service of the underlying neglect petition. See, e.g., In re E.M., 295 Ill.App.3d 220, 224, 229 Ill.Dec. 658, 692 N.E.2d 431, 434 (1998); compare In re S.G., 175 Ill.2d 471, 483, 222 Ill.Dec. 386, 677 N.E.2d 920, 926 (1997) (where the supreme court held that, as to fathers who had been served by publication but had not appeared, the period began running at the time that the fathers were found in default by the court). Construing "service of process" to refer to service of the underlying neglect petition fairly comports with the overall statutory scheme, for the Juvenile Court Act contains a specific provision prescribing that, when a petition is filed, summons on that petition will issue. 705 ILCS 405/2-15 (West 1998).
Here, James Ellis was not served summons on the instant petition until June 25, 1999, nor had he previously appeared. If we took this date as beginning the running of the statutory period, the deadline for commencing the adjudicatory hearing was September 23, 1999. As the proceedings here in fact commenced on August 19, 1999, they were well within the period under this interpretation.
Natalie Ellis presents us with a different theory: that notice of a shelter-care hearing will also suffice to trigger the running of the 90-day period. Most troubling for the State's case on appeal, it appears to have adopted her position at all times in the court below. The State assured the court several times that the statutory period ran from May 7 (service upon all parties of notice of the shelter-care hearing, which hearing was held that date) until August 4, 1999, e.g.:
"JUDGE DIFANIS: But you agree that the 4[th] of August is the crucial date?
STATE'S ATTORNEY: That's the 90th day."
As to the underlying petition, the State did not even adduce proof of service upon James Ellis until the day before Natalie Ellis filed her appellate brief with this court.
In support of her position, Natalie Ellis points out that section 2-10(3) of the Juvenile Court Act requires shelter-care hearing notices to contain a significant amount of detail, and relies especially on the required warning that "the parties will not be entitled to further written notices * * * of proceedings in this case, including the filing of an amended petition or a motion to terminate parental rights." 705 ILCS 405/2-10(3) (West 1998). Her overall point is an arguable one, for the primary purpose of service of process is clearly to apprise individuals of the existence and nature of proceedings against them. Properly served notices of a shelter-care hearing would fulfill this purpose, as they amply inform parents that the welfare of their children, and their role regarding same, are at issue.
While we would reject this argument as a matter of statutory construction, we also note that the shelter-care hearing notices issued here were deficient, most notably because they did not contain the language upon which Natalie Ellis relies. That is, they failed to apprise the recipient that he or she would not be entitled to further notice, in conformity with section 2-10(3) of the Juvenile Court Act. Being deficient, they were infirm to trigger the provisions of section 2-14 of the Juvenile Court Act. That time limitation then began running only when James Ellis was finally served on June 25 and, because the adjudicatory hearing commenced 55 days later, it came within the statute's directives.
*1286 Nonetheless, owing to failure to raise this issue in the court below, and because the issue is capable of repetition, we address the relationship between section 2-14 of the Juvenile Court Act and the substitution of a judge as a matter of right, where it is assumed that invocation of the right results in commencement of the proceedings at some time beyond the statutory deadline.

II. SECTION 2-14 OF THE JUVENILE COURT ACT AND THE SUBSTITUTION OF A JUDGE AS A MATTER OF RIGHT
Section 2-14 of the Juvenile Court Act was recently addressed by the Supreme Court of Illinois in S.G., 175 Ill.2d at 479-83, 222 Ill.Dec. 386, 677 N.E.2d at 924-26. Under the version of the statute then in effect, an adjudicatory hearing had to have been "held" within 90 days of the service of process. One of the issues in the case was whether this meant the hearing must actually have been completed within that time or merely commenced. The supreme court took the view that the proceedings must be completed within 90 days of service. Because the rationale of the court in reaching its decision bears directly upon our reasoning today, we quote the court directly:
"[The conclusion that the hearings must be completed within the statutory period] is also consistent with the stated purpose of the statute to `insure' the speedy resolution of abuse and neglect cases. If we allowed a technical start of the hearing followed by an indeterminate period of delay to satisfy section 2-14, the statutory protection * * * would not be guaranteed. * * * We are also confident that the trial judge can exercise sufficient control over the proceedings to prevent a party from obtaining a dismissal through purposeful delay." S.G., 175 Ill.2d at 483, 222 Ill.Dec. 386, 677 N.E.2d at 926.
Three dissenting justices repudiated the majority's narrow construction, citing our prior decision in In re H.R., 283 Ill.App.3d 907, 219 Ill.Dec. 428, 671 N.E.2d 93 (1996), vacated, 173 Ill.2d 525, 225 Ill.Dec. 388, 683 N.E.2d 891 (1997), for the proposition that, while diligent court proceedings were clearly the salutory purpose underlying the section, the speedy resolution of adjudicatory hearings might not always be consistent with the legislature's overall intent to safeguard children. S.G., 175 Ill.2d at 500-02, 222 Ill.Dec. 386, 677 N.E.2d at 934 (McMorrow, J., dissenting). The dissent moreover noted the danger presented by parties who were wilfully dilatory. S.G., 175 Ill.2d at 499-500, 222 Ill.Dec. 386, 677 N.E.2d at 933 (McMorrow, J., dissenting). The dissent therefore called upon the legislature to amend the statute. S.G., 175 Ill.2d at 502-03, 222 Ill.Dec. 386, 677 N.E.2d at 935 (McMorrow, J., dissenting).
The legislature did in fact amend section 2-14(b) in accordance with the S.G. dissent's suggestion. The word "held" was changed to "commenced." Pub. Act 90-456, § 10, eff. January 1, 1998 (1997 Ill. Laws 5159, 5160). A second sentence was also added to that subsection, providing: "Once commenced, subsequent delay in the proceedings may be allowed by the court when necessary to ensure a fair hearing." Pub. Act 90-456, § 10, eff. January 1, 1998 (1997 Ill. Laws at 5160).
The legislative response to S.G. informs our disposition of the case sub judice. It is clear the legislature intended, not slavish adherence to an arbitrarily fixed period of time, but concern for the overall purpose of the Juvenile Court Act. It should not be forgotten that the statute's statement of purpose and policy itself, section 2-14(a), speaks not just in terms of speedy adjudication but "just and speedy" adjudication. The legislature is also apparently willing to entrust the courts to proceed with, in the words of the S.G. majority, "a technical start of the hearing followed by an indeterminate period of delay" (S.G., 175 Ill.2d at 483, 222 Ill.Dec. 386, 677 N.E.2d at 926), so long as such delay is necessary to ensure a fair hearing.
The foregoing being the case, we hold that where the circuit court and the *1287 State stand ready to commence adjudication on the petition within the statutory time frame (under any construction), yet then encounter delay owing to a respondent's rightful claim of entitlement to substitution of the judge, the running of the time for adjudication must be tolled until such time a judge acceptable to all concerned may hear the case. This interpretation gives deference both to concerns for the just and speedy administration of justice and the fundamental fairness of the proceedings. To hold otherwise would have the dire consequences predicted by the S.G. dissent. Respondent parents would be empowered to unilaterally compel the dismissal of neglect petitions by lying in the weeds until, as in this case, waiting until the last possible moment to raise the issue. To "exercise sufficient control" in preventing such a result, courts would be forced to build into their docketing of these matters enough leeway to account for the mere possibility that a respondent may file a motion under section 2-1001 of the Code of Civil Procedure (735 ILCS 5/2-1001 (West 1998)). Furthermore, where as here, the case involves a mother, a father, a second father, and several minors (through their GAL), all of whom may be entitled to such motions, the burden to the fair and just administration of justice becomes intolerable. We reject any interpretation that would lead to such results; the period was tolled.
Because the proceedings in this case commenced within the time contemplated by section 2-14 of the Juvenile Court Act (705 ILCS 405/2-14 (West 1998)), we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.
Reversed and remanded.
McCULLOUGH and MYERSCOUGH, JJ., concur.