NO. 4-07-1030          Filed 5/12/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: JOHN C.M., Alleged to be a | ) | Appeal from |
| Neglected Minor, | ) | Circuit Court |
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | of McLean County |
|       Petitioner-Appellee, | ) | No. 07JA23 |
|       v. | ) | |
| ASHLEIGH MEGINNES, | ) | Honorable |
|       Respondent-Appellant. | ) | Donald D. Bernardi, |
| | ) | Judge Presiding |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

In February 2007, the State filed a petition for adjudication of wardship of respondent, Ashleigh Meginnes's son, John C.M. (born December 14, 2005), alleging he was abused. In August 2007, the trial court entered an adjudicatory order finding John to be neglected and placed him in the custody of his father, Alan Carter. On November 13, 2007, the court entered a dispositional order finding respondent unfit. The court found Carter fit, placed John in Carter's custody, and closed the case. Carter is not a party to this appeal.

Respondent appeals, contending (1) the trial court lacked jurisdiction to proceed at the dispositional hearing, which took place more than six months after John was removed from respondent's home; the court's dispositional order finding her unfit was against the manifest weight of the evidence; and (3) the court abused its discretion in finding Carter fit. We

disagree and affirm.

## I. BACKGROUND

On the afternoon of February 5, 2007, respondent took John to his pediatrician. John had bruising to the back of his head, extending from ear to ear. Respondent told the pediatrician that she placed John in bed the previous night at approximately 8 or 8:30 p.m. On February 5, at approximately noon, respondent asked Andrew Mack, her then paramour, to wake John and change his diaper, at which time the bruising was discovered. Respondent and Mack denied causing the injury. Respondent could provide no explanation to the pediatrician as to how John sustained the injuries. The pediatrician referred John to BroMenn Hospital in Bloomington, Illinois. John was immediately transferred to St. Francis Hospital in Peoria, where a computerized tomography (CT) scan showed a subdural hematoma to the brain.

On February 13, 2007, the State filed a petition for adjudication of wardship, alleging (1) John was abused, in that respondent or someone she entrusted inflicted on him physical injury by other than accidental means, which caused disfigurement, impairment of emotional health, or loss of impairment of any bodily function, in that John had bruising and swelling across the back of his head from ear to ear with no plausible explanation for the injury (705 ILCS 405/2-3(2)(i) (West 2066)),

- 2 -

and (2) John was neglected in that he was residing in an environment injurious to his welfare as respondent had unresolved issues of domestic violence creating a risk of harm for John (705 ILCS 405/2-3(1)(b) (West 2006)).

On February 14, 2007, a shelter-care hearing was held. The trial court found probable cause that John was abused as respondent had (1) no plausible explanation for the bruising and swelling to John's head and (2) unresolved issues of domestic violence. A temporary custody order was issued placing guardianship of John with the Illinois Department of Children and Family Services (DCFS). John was placed by DCFS with Carter, who lived apart from and was not involved in a current relationship with respondent. Respondent had no prior involvement with DCFS and a law-enforcement-agencies-data-system (LEADS) check was negative. Carter had no prior involvement with DCFS, but a LEADS check was positive for residential burglary-criminal trespass to a residence in 2005, and the manufacture or delivery of cannabis in 2002.

Respondent's paramour, Mack, had no prior involvement with DCFS, but he had several charges with no convictions for assault and drug possession. Two of those assault charges involved respondent.

At a pretrial hearing on March 15, 2007, all parties waived the requirement that the adjudicatory hearing be held

- 3 -

within 90 days of the child being taken into custody.  Additional pretrial hearings were held in April and May.

In August 2007, the State amended the petition for adjudication of wardship, alleging (1) John was neglected and residing in an environment injurious to his welfare in that he suffered injuries to his head, (2) respondent acknowledged she was the primary caretaker for the minor, and (3) respondent had no plausible explanation consistent with the medical evidence to explain the injuries (705 ILCS 405/2-3(1)(b) (West 2006)).  On August 2, 2007, the adjudicatory hearing was held.  Respondent admitted the allegation in the amended petition, and the trial court entered an adjudicatory order finding John neglected.  At the adjudicatory hearing, the parties waived the right to hold the dispositional hearing within 30 days of the adjudicatory hearing.  The dispositional hearing was scheduled for September 12, 2007.

On October 17, 2007, the State filed a notice that the dispositional hearing had been reset for November 13, 2007.  Nothing in the record indicates why the dispositional hearing was continued from September 12 to November 13, 2007, or whether it was agreed to by respondent.

In November 2007, DCFS filed a dispositional report that recommended guardianship of John be placed with Carter, the court find respondent unfit and Carter fit, and the case be

- 4 -

closed. In the dispositional report, DCFS outlined the parties' progress with service plans. Respondent's goals included the following: (1) successful completion of domestic-violence assessment and counseling, (2) maintenance of stable housing for herself and John, (3) counseling, (4) successful completion of parenting classes, and (5) obtaining and maintaining employment. As part of her domestic-violence assessment, respondent reported a history of domestic violence in her relationship with Carter, including that Carter physically abused her and was manipulative and controlling. While respondent was cooperative with services and deemed to have achieved or was satisfactory in her service-plan goals with the exception of housing, the report stated respondent did not seem to understand or apply the lessons from counseling as represented by her relationship with Mack. At the time of the dispositional report, respondent no longer resided with Mack but was living with Michael Barnes, a new paramour.

Carter's goals included the following: (1) successful completion of outpatient treatment for drugs and alcohol, (2) cooperation with DCFS, and (3) successful completion of parenting classes. No domestic-violence or anger-management goals were established for Carter. Carter was cooperative with services, and he was deemed to have achieved all of his service-plan goals. John was reported as having adjusted well to living with Carter.

A psychological evaluation of respondent was conducted,

and the report was filed with the court as part of the service plan. The psychologist, Joel Eckert, noted that the alleged perpetrator remained unknown and that caused him great concern as to respondent's ability to protect John or any other child from abusive or nonnurturing men. Eckert recommended that if John were returned to respondent's care, it be done slowly and be monitored to ensure "such a process proceeds safely."

On November 13, 2007, a dispositional hearing was held. Respondent did not object to proceeding with the hearing. At the hearing, the State recommended that respondent be found unfit, Carter be found fit, the minor remain in Carter's custody, and the court close its file on the matter without proceeding to a best-interests hearing. Respondent requested the court keep the file open for additional time to prove her fitness to parent. The trial court denied respondent's request for additional time to prove her fitness, entered an order finding respondent unfit, found Carter fit, and granted custody and guardianship of John to Carter. The court closed the file.

This appeal followed.

## II. ANALYSIS

### A. The Trial Court Had Subject-Matter Jurisdiction at the Dispositional Hearing

#### 1. Requirements of Statutory Scheme Limit Time To Hold Dispositional Hearing to Six Months

Respondent argues that the trial court lacked subject-

matter jurisdiction to proceed to disposition as more than six months elapsed after the removal of the minor from respondent's home, and as such, the trial court's order was void. The temporary custody order was entered on February 14, 2007, the adjudicatory hearing was held August 2, 2007, and the dispositional hearing was held November 13, 2007. Respondent argues that because section 2-22(4) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-22(4) (West 2006)) limits the time to hold a dispositional hearing to a maximum of six months after removal of the minor from the home, the court was required to hold the dispositional hearing no later than August 14, 2007.

Under the Act, the adjudicatory hearing must be commenced within 90 days of the date of service upon the minor, parents, or guardian. 705 ILCS 405/2-14(b) (West 2006). Upon motion of the parties and a finding by the trial court that a continuance is in the child's best interests, the adjudicatory hearing may be continued for up to 30 days. 705 ILCS 405/2-14(c) (West 2006). There is no question that the parties waived the 90-day time period to hold the adjudicatory hearing and the court found it in the child's best interests to do so, although the hearing was continued for more than 30 days. Respondent did not object to the adjudicatory hearing being continued for more than 30 days.

The dispositional hearing must be set within 30 days

- 7 -

after an adjudicatory order is entered.  705 ILCS 405/2-21(2)(West 2006).  By consent of the parties and with approval of the court consistent with the health, safety and best interests of the minor, the 30-day time period may be waived.  705 ILCS 405/2-21(3) (West 2006).  Here, the parties waived the 30-day time period and the court found it in the child's best interests to continue the hearing.  Nothing indicates why the dispositional hearing was continued from September 12 to November 13, 2007.  Respondent did not object to proceeding with the dispositional hearing on November 13, 2007.

The Act provides that the dispositional hearing shall be held within six months of the child being removed from his home:

> "[T]he court may adjourn the hearing for a reasonable period to receive reports or other evidence, if the adjournment is consistent with the health, safety[,] and best interests of the minor, but in no event shall continuances be granted so that the dispositional hearing occurs more than 6 months after the initial removal of [the] minor from his or her home."  705 ILCS 405/2-22(4) (West 2006).

Respondent argues this provision of the Act was not complied

with, which dispossessed the trial court of subject-matter jurisdiction.

## 2. Standard of Review Is De Novo

Whether the circuit court properly exercised jurisdiction is reviewed de novo. In re Marriage of Chrobak, 349 Ill. App. 3d 894, 897, 811 N.E.2d 1248, 1252 (2004). A judgment entered by a court that lacked subject-matter jurisdiction is void and may be attacked at any time and in any proceeding. In re Marriage of Adamson, 308 Ill. App. 3d 759, 764, 721 N.E.2d 166, 172 (1999). Subject-matter jurisdiction cannot be forfeited. Currie v. Lao, 148 Ill. 2d 151, 157, 592 N.E.2d 977, 979 (1992).

## 3. Respondent Argues Lack of Subject-Matter Jurisdiction Renders Order Void

Respondent argues that the trial court's dispositional order was void for want of subject-matter jurisdiction. "Whether a judgment is void or voidable presents a question of jurisdiction." People v. Davis, 156 Ill. 2d 149, 155, 619 N.E.2d 750, 754 (1993). A voidable judgment is one entered erroneously by a court and is not subject to collateral attack. Davis, 156 Ill. 2d at 155-56, 619 N.E.2d at 754. "'Judgments entered in a civil proceeding may be collaterally attacked as void only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties.'"

- 9 -

In re Marriage of Mitchell, 181 Ill. 2d 169, 174, 692 N.E.2d 281, 284 (1998), quoting Johnston v. City of Bloomington, 77 Ill. 2d 108, 112, 395 N.E.2d 549, 550 (1979).

> "Once a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law. [Citations.] 'Accordingly, a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law[,] or both.' [Citation.]" Marriage of Mitchell, 181 Ill. 2d at 174-75, 692 N.E.2d at 284.

If respondent is correct and the trial court lacked subject-matter jurisdiction, the dispositional order is void; if respondent is incorrect and the trial court had jurisdiction, the only issue on appeal is whether the trial court's findings of fitness were against the manifest weight of the evidence.

　　4.　Subject-Matter Jurisdiction Before Belleville Toyota Requires Courts To Follow Strictures of Statute

　　　Respondent relies on In re M.M., 156 Ill. 2d 53, 619 N.E. 2d 702 (1993), in support of the position that the court lacked subject-matter jurisdiction.  In M.M., the Illinois Supreme Court concluded the trial court exceeded its jurisdiction under the Act when it restricted the guardianship administrator's

- 10 -

authority to consent to adoption when the trial court required adoptive parents to agree to continued contact of the minors with their biological families.  M.M., 156 Ill. 2d at 66, 619 N.E.2d at 710.

In M.M., appellants argued that changes to the Illinois Constitution in 1964 and 1970 fundamentally changed the power of the trial court to invoke subject-matter jurisdiction and that subject-matter jurisdiction could not be limited by the legislature.  M.M., 156 Ill. 2d at 64, 619 N.E.2d at 709.  While recognizing that subject-matter jurisdiction was conferred on courts by the constitution (with the exception of administrative review actions), the supreme court held the change made to the constitution did not give courts the power to proceed in derogation of a statute, as the effect of such a holding would render any statutory law a nullity.  M.M., 156 Ill. 2d at 65, 619 N.E.2d at 709-10.  The legislature could define a "justiciable matter" so as to preclude or limit the circuit court's authority.  M.M., 156 Ill. 2d at 65-66, 619 N.E.2d at 710.  When a court's power to act is controlled by statute, the court has limited jurisdiction and must proceed within the strictures of that statute.  M.M., 156 Ill. 2d at 66, 619 N.E.2d at 710.  As juvenile court proceedings were special statutory proceedings, the scope and application of the Act were solely defined by the legislature.  M.M., 156 Ill. 2d at 66, 619 N.E.2d at 710.  If a circuit court acts outside of

the strictures of the statute, the court exceeds its statutory authority.  M.M., 156 Ill. 2d at 66, 619 N.E.2d at 710.  Therefore, when the trial court acted to limit, restrict, or condition the power of a guardian without specific statutory authority, the court exceeded its jurisdiction under the Act.  M.M., 156 Ill. 2d at 66, 619 N.E.2d at 710.  Here, respondent argues the trial court exceeded its jurisdiction under the Act when the dispositional hearing took place nine months after John was removed from respondent's home.  The State argues that M.M. is inapplicable to this case as the issue there was whether the trial court could restrict the guardian's power to consent to adoption; the supreme court did not even address the failure to comply with the time periods of the Act.

Respondent also relies on In re S.G., 175 Ill. 2d 471, 677 N.E.2d 920 (1997), to support her position that the time periods of section 2-22 are mandatory.  In S.G., the supreme court ruled that the time periods outlined in section 2-14 of the Act that required an adjudicatory hearing within 90 days of service of process upon the parties were mandatory and the court was obligated to dismiss a petition for adjudication of wardship that was not completed in the prescribed time frame.  S.G., 175 Ill. 2d at 483, 677 N.E.2d at 926.  In arriving at its conclusion, the court reviewed section 2-14 of the Act, which stated, in part:

- 12 -

"(a) Purpose and policy. The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the best interests of the minor and the effort to establish permanent homes for children in need. The purpose of this [s]ection is to insure that *** the State of Illinois will act in a just and speedy manner to determine the best interests of the minor ***.

(b) When a petition is filed alleging that the minor is abused, neglected, or dependent, an adjudicatory hearing shall be held within 90 days of the date of service of process upon the minor, parents, any guardian[,] and any legal custodian." 705 ILCS 405/2-14(a), (b) (West 1994).

Section 2-14(c) allowed for a continuance upon good cause shown, not exceeding 30 days, if the continuance was in the best interests of the child. S.G., 175 Ill. 2d at 480-81, 677 N.E.2d at 924-25; 705 ILCS 405/2-14(c) (West 1994). The section also allowed for a waiver of the time limits by consent of all the parties and on approval of the court. S.G., 175 Ill. 2d at 481,

677 N.E.2d at 925; 705 ILCS 405/2-14(d) (West 1994).

In S.G., the court concluded that the legislature intended a mandatory construction of section 2-14 and upheld dismissal of the petition. S.G., 175 Ill. 2d at 482, 677 N.E.2d at 925. The court distinguished an earlier decision, In re Armour, 59 Ill. 2d 102, 104, 319 N.E.2d 496, 498 (1974), which read the term "shall" in the Act as directory, rather than mandatory. S.G, 175 Ill. 2d at 481, 677 N.E.2d at 925. In the Armour decision, the supreme court construed a provision requiring that a petition "shall be set for an adjudicatory hearing within 30 days." Ill. Rev. Stat. 1971, ch. 37, par. 704-2. In reaching the decision that the language was directory, the supreme court considered the intent of the legislature and concluded that dismissing a petition would not further the goals of the Act to rehabilitate and protect minors. S.G., 175 Ill. 2d at 481, 671 N.E.2d at 925, citing Armour, 59 Ill. 2d at 104-05, 319 N.E.2d at 498. The Armour court also concluded that the language of the statute did not evince the legislative intent necessary for a mandatory construction as it did not include a consequence for failure to set the adjudicatory hearing within the time period. Armour, 59 Ill. 2d at 104-05, 319 N.E.2d at 498.

In S.G., the court explained that the Armour decision was distinguishable because section 2-14 of the Act had an

explicit statement of policy that delay could cause harm to minors and the section gave direction as to how time periods were calculated and the manner of granting continuances. S.G., 175 Ill. 2d at 481, 677 N.E.2d at 925. The court highlighted that section 2-14 contained a specific provision for dismissal without prejudice of any petition where an adjudicatory hearing was not timely held, evidencing legislative intent to make the time period of section 2-14 mandatory. S.G., 175 Ill. 2d at 481-82, 677 N.E.2d at 925.

The State argues S.G. is distinguishable from the case sub judice as S.G. interpreted section 2-14 of the Act which provides for dismissal of the petition for failure to comply with the time periods. The State argues that, as in Armour where the supreme court found the 30-day hearing requirement as directory rather than mandatory, section 2-22(4) does not have dismissal language. The State argues the trial court retains subject-matter jurisdiction even when it fails to hold a hearing within the statutory time frames.

In support thereof, the State relies on In re C.S., 294 Ill. App. 3d 780, 786, 691 N.E.2d 161, 165 (1998), where this court held that when a trial court fails to proceed "'within the strictures of the statute'" the court does not lose its constitutionally conferred subject-matter jurisdiction, but, instead, proceeds in error because it lacks statutory authority. In C.S.,

this court stated any error a trial court commits by not holding the adjudicatory and dispositional hearings prior to the statutory deadlines of sections 2-14 and 2-21 of the Act did not render the order void for lack of subject-matter jurisdiction. C.S., 299 Ill. App. 3d at 786, 691 N.E.2d at 165.

Statutory authority and compliance with mandates of the Act were required for trial courts to obtain and maintain subject-matter jurisdiction. In re A.H., 195 Ill. 2d 408, 416, 748 N.E.2d 183, 189 (2001). In A.H., the supreme court again recognized that statutory authority must be contained in the Act before a court may order removal of a child from a foster home. DCFS challenged the trial court's authority to order a placement change for a child in foster care, arguing that power lay only with the guardianship administrator of DCFS. The court noted that removal of a child from a parent's care because of abuse, neglect, and dependency was not known at common law or equity. A.H., 195 Ill. 2d at 415-16, 748 N.E.2d at 188-89. As that grant of authority to remove an abused child was purely statutory in nature, the trial court had to "'proceed within the strictures of the statute.'" A.H., 195 Ill. 2d at 416, 748 N.E.2d at 189, quoting M.M., 156 Ill. 2d at 66, 619 N.E.2d at 710. The court found that the juvenile court had jurisdiction in that particular instance to order the removal of a child from a foster placement, as the language of the Act expressly granted that authority to

- 16 -

circuit courts.  <u>A.H.</u>, 195 Ill. 2d at 420, 748 N.E.2d at 191.

> "In particular, section 2-10(2) autho-
> rizes the court to 'enter such other orders
> <u>related to</u> the temporary custody [of the
> minor] as it deems fit and proper, including
> the provision of services to the minor or his
> family to ameliorate the causes contributing
> to the finding of probable cause or the find-
> ing of the existence of immediate and urgent
> necessity.'  (Emphasis in original.)  [Cita-
> tion.]  ***  We believe, however, that the
> phrase 'such other orders' contemplates the
> authority to enter an order to remove a minor
> from his temporary foster care because the
> order is related to the minor's temporary
> custody."  <u>A.H.</u>, 195 Ill. 2d at 419-20, 748
> N.E.2d at 191.

While the statutory language did not explicitly grant the trial
court authority to order removal of a child, the appellate court
found sufficient authorization in the general language of the
statute to confer jurisdiction on the court to order removal of
the child.

5. <u>Subject-Matter Jurisdiction Reexamined in Belleville Toyota</u>

The supreme court reexamined subject-matter jurisdic-

- 17 -

tion in a series of cases sometimes referred to as the "Belleville Toyota" cases. Steinbrecher v. Steinbrecher, 197 Ill. 2d 514, 759 N.E.2d 509 (2001); Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 770 N.E.2d 177 (2002); People ex rel. Graf v. Village of Lake Bluff, 206 Ill. 2d 541, 795 N.E.2d 281 (2003). The cases cited by respondent, M.M. and S.G., as well as A.H., reiterate that trial courts must strictly adhere to limitations set forth in statutes in order to possess subject-matter jurisdiction. In Steinbrecher, issued five months after A.H., the court recognized the effect amendments made to the Illinois Constitution in 1964 and 1970 had on the power of courts to exercise subject-matter jurisdiction. The amendments expanded circuit courts into courts of general jurisdiction, no longer restricted by statutory limitations. The amendments provided:

> "'Circuit Court[s] shall have unlimited original jurisdiction of all justiciable matters." Ill. Const. 1870, art. VI, §9 (amended 1964); accord Ill. Const. 1970, art. VI, §9 ("Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction')." Steinbrecher, 197 Ill. 2d at 530, 759 N.E.2d at 518.

The court stated the amendments "created a single integrated trial court vested with jurisdiction to adjudicate all controversies." Steinbrecher, 197 Ill. 2d at 530, 759 N.E.2d at 518, citing Zamarron v. Pucinski, 282 Ill. App. 3d 354, 360, 668 N.E.2d 186, 191 (1996). Administrative agencies and pre-1964 circuit courts had been powerless to act without specific statutory authority, but since the 1964 amendment, circuit courts became courts of general jurisdiction no longer required to look to statutes for jurisdictional authority. Steinbrecher, 197 Ill. 2d at 530, 759 N.E.2d at 519. No longer did a court's failure to follow the language of a statute divest a court of jurisdiction, but rather, that failure simply resulted in a voidable order. Steinbrecher, 197 Ill. 2d at 531-32, 759 N.E.2d at 519-20.

Steinbrecher was then followed by Belleville Toyota, which addressed limitation periods contained in the Motor Vehicle Franchise Act (815 ILCS 710/1 through 32 (West 2000)). The supreme court emphasized that as a result of the amendments to the constitution "[w]ith the exception of the circuit court's power to review [an] administrative action, which is conferred by statute, a circuit court's subject[-]matter jurisdiction is conferred entirely by our state constitution." Belleville Toyota, 199 Ill. 2d at 334, 770 N.E.2d at 184. A court's jurisdiction extends to all justiciable matters. Belleville Toyota, 199 Ill. 2d at 334, 770 N.E.2d at 184. A justiciable matter is

- 19 -

defined as a definite and concrete controversy appropriate for review by the court, touching upon legal relations of parties with adverse legal interests. Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 184.

"The legislature may create new justiciable matters by enacting legislation that creates rights and duties that have no counterpart at common law or in equity." Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 185, citing M.M., 156 Ill. 2d at 65, 619 N.E.2d at 711. When the legislature adopted the Motor Vehicle Franchise Act in 1979, it created a new justiciable matter. Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 185. However, the legislature's creation of a new justiciable matter did not mean the legislature conferred jurisdiction on circuit courts. Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 185. "Article VI is clear that, except in the area of administrative review, the jurisdiction of the circuit court flows from the constitution." (Emphasis in original.) Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 185. The General Assembly has no power to enact legislation that contravened article VI of the constitution. Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 185.

The supreme court rejected the suggestion that the legislature could impose conditions precedent to the court's exercise of jurisdiction, emphatically stating:

"We necessarily reject this view because it is contrary to article VI. Characterizing the requirements of a statutory cause of action as nonwaivable conditions precedent to a court's exercise of jurisdiction is merely another way of saying that the circuit court may only exercise that jurisdiction which the legislature allows. We reiterate, however, that the jurisdiction of the circuit court is conferred by the constitution, not the legislature. ***.

    The legislature's limited role, under our current constitution, in defining the jurisdiction of the circuit court stands in stark contrast to the significant role previously exercised by the legislature under our former constitution." Belleville Toyota, 199 Ill. 2d at 336, 770 N.E.2d at 185.

The supreme court differentiated current cases from those under the pre-1964 constitution. Under the pre-1964 constitution, in cases that involved "purely statutory causes of action, we held that unless the statutory requirements were satisfied, a court lacked jurisdiction to grant the relief requested." Belleville Toyota, 199 Ill. 2d at 336-37, 770 N.E.2d at 185. The 1964

amendments "radically changed the legislature's role in determining the jurisdiction of the circuit court." Belleville Toyota, 199 Ill. 2d at 337, 770 N.E.2d at 186. Now circuit courts enjoy "'original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law.'" Belleville Toyota, 199 Ill. 2d at 337, 770 N.E.2d at 186, quoting Ill. Const. 1870, art. VI, §9 (amended 1964). The court held that "the precedential value of case law which examines a court's jurisdiction under the pre-1964 judicial system is necessarily limited to the constitutional context in which those cases arose." Belleville Toyota, 199 Ill. 2d at 337, 770 N.E.2d at 186. The court further recognized that "pre-1964 rules of law continue to be cited by Illinois courts, without qualification, creating confusion and imprecision in the case law." Belleville Toyota, 199 Ill. 2d at 338, 770 N.E.2d at 186. To the extent earlier case law deemed time limitations in statutory actions to be jurisdictional, the Belleville Toyota court limited those cases to the pre-1964 constitutional context in which they arose. Belleville Toyota, 199 Ill. 2d at 340, 770 N.E.2d at 187.

The supreme court held the limitation period contained in the Motor Vehicle Franchise Act was not a jurisdictional prerequisite to suit. Belleville Toyota, 199 Ill. 2d at 341, 770 N.E.2d at 188. This was "consistent with authority *** favoring finality of judgments over alleged defects in validity."

<u>Belleville Toyota</u>, 199 Ill. 2d at 341, 770 N.E.2d at 188. The court cautioned that under the current constitution, labeling requirements contained in statutory causes of action as jurisdictional allowed for the "unwarranted and dangerous expansion of the situations where a final judgment may be set aside on a collateral attack." <u>Belleville Toyota</u>, 199 Ill. 2d at 341, 770 N.E.2d at 188. "Once a statutory requirement is deemed 'nonwaivable,' it is on equal footing with the only other nonwaivable conditions that cause a judgment to be void, and thus subject to a collateral attack--a lack of subject[-]matter jurisdiction, or a lack of personal jurisdiction." <u>Belleville Toyota</u>, 199 Ill. 2d at 341, 770 N.E.2d at 188. "'[O]rders should be characterized as void only when no other alternative is possible.'" <u>Belleville Toyota</u>, 199 Ill. 2d at 341, 770 N.E.2d at 188, quoting <u>In re Marriage of Bernon</u>, 253 Ill. App. 3d 783, 788, 653 N.E.2d 823, 827 (1993). After rejecting defendant's claim that the trial court lacked subject-matter jurisdiction, the court weighed whether the limitation period contained in the statute was an element of plaintiff's claim, which had to be pled and proved, or whether it was an ordinary limitation period, providing a technical defense to the claim. <u>Belleville Toyota</u>, 199 Ill. 2d at 342, 770 N.E.2d at 188. The court found the statute was an ordinary statute of limitation that provided a technical defense that could be waived. <u>Belleville Toyota</u>, 199

Ill. 2d at 344-45, 770 N.E.2d at 190.

In the supreme court's next case addressing subject-matter jurisdiction, the court expressly limited the precedential value of the case law that held statutory requirements were nonwaivable conditions to the constitutional context existing before the amendments to the Illinois Constitution. Graf, 206 Ill. 2d at 552-53, 795 N.E.2d at 287. The court noted the well-established principle that the legislature alone has the authority to create a justiciable controversy when it enacts a statute. Graf, 206 Ill. 2d at 553-54, 795 N.E.2d at 288. Once the circuit court is thereafter presented with a controversy under that statute, the court has "jurisdiction to hear and determine the matter because the court's constitutionally granted original jurisdiction extends to the general class of cases arising under the statute." Graf, 206 Ill. 2d at 554, 795 N.E.2d at 288, citing Belleville Toyota, 199 Ill. 2d at 340, 770 N.E.2d at 187-88. Once a justiciable matter is properly before the court, that court has the power to decide rightly or wrongly the issues properly before it. Belleville Toyota, 199 Ill. 2d at 340-41, 770 N.E.2d at 188.

The Belleville Toyota line of cases crystallized the principle that, as a result of the changes made to the Illinois Constitution, limitation periods contained in statutes were not jurisdictional prerequisites to suit and circuit courts did not

lose jurisdiction when they failed to follow the "strictures of the statute." Belleville Toyota, 199 Ill. 2d at 340-41, 770 N.E.2d at 188.  However, more recently, the supreme court held that when a circuit court exercises authority over a minor pursuant to the Act, trial courts must proceed within the strict confines of that law and have no authority except as the Act specifically provides.  See In re Jaime P., 223 Ill. 2d 526, 861 N.E.2d 958 (2006) (juvenile court possessed no jurisdiction to continue probation beyond juvenile's 21st birthday);  People v. Brown, 225 Ill. 2d 188, 199, 866 N.E.2d 1163 (2007) (defendant's transfer from juvenile to criminal court was void under the Act). Neither Jaime P. nor Brown references the Belleville Toyota cases or attempts to harmonize the seemingly different interpretations of subject-matter jurisdiction.

The determination of whether subject-matter jurisdiction has been lost when statutory mandates are not strictly followed is fact specific.  In In re O.H., 329 Ill. App. 3d 254, 258, 768 N.E.2d 799, 802 (2002), the appellate court quotes the M.M. holding that the scope and application of the Act are defined solely by the legislature and a circuit court must proceed within the stricture of the statute.  The court then found that the circuit court had inherent plenary power through the doctrine of parens patriae to enter an order in the best interests of the child.  O.H., 329 Ill. App. 3d at 260, 768

N.E.2d at 804.  Despite having positively cited the M.M. finding that the Act was a special statutory proceeding, the O.H. court stated that "[t]he court's power to interfere with and control the persons and custody of all minors within its jurisdiction existed in the common law, prior to and independent of the Juvenile Court Act, by inheritance from the English courts of chancery."  O.H., 329 Ill. App. 3d at 260, 768 N.E.2d at 804.

In a case involving the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1-100 through 6-107 (West 2004)), the appellate court stated M.M. had largely been over-ruled by the supreme court as a result of the Belleville Toyota line of cases.  In re Alex T., 375 Ill. App. 3d 758, 761, 873 N.E.2d 1015, 1017 (2007).  The court nevertheless found strict statutory authorization was required under the Code before a court had jurisdiction to enter an involuntary admission order.  Alex T., 375 Ill. App. 3d at 763, 873 N.E.2d at 1019.

The respondent had a felony charge pending against him.  Section 3-100 of the Code (405 ILCS 5/3-100 (West 2004)) provided that "'[t]he circuit court has jurisdiction under this [c]hapter over persons not charged with a felony who are subject to invol-untary admission.'"  Alex T., 375 Ill. App. 3d at 759, 873 N.E.2d at 1016, quoting 405 ILCS 5/3-100.  In making its determination that statutory authorization must exist before a court has jurisdiction to enter an order, the court looked to the holdings

of a pre-Steinbrecher case, People v. McCarty, 94 Ill. 2d 28, 445 N.E.2d 298 (1983). In McCarty, the supreme court stated that "'[t]he basis for the plain-error holdings in [four supreme court cases, including two juvenile cases,] was that a conviction or an order significantly restricting the liberty of a defendant must have statutory authorization and is a nullity otherwise.'" (Emphasis in original.) Alex T., 375 Ill. App. 3d at 762-63, 873 N.E.2d at 1019, quoting McCarty, 94 Ill. 2d at 37, 445 N.E.2d at 303. The cases referenced by McCarty included two juvenile cases, suggesting the court intended the principle of explicit statutory authority required in cases involving significant restriction of liberty to extend beyond criminal cases. Alex T., 375 Ill. App. 3d at 763, 873 N.E.2d at 1019. The court held that because an order for involuntary admission significantly restricted a person's liberty, strict statutory authorization was required before a court had jurisdiction to enter an order. "Any involuntary admission order entered against a person charged with a felony is thus an order entered by a court that lacks jurisdiction, and so is void." Alex T., 375 Ill. App. 3d at 763, 873 N.E.2d at 1019.

### 6. Respondent's Agreed Continuances Tolled Time Period To Hold Dispositional Hearing

Recently, several appellate courts have addressed the question of whether the time periods of the Act are mandatory or directory and whether failure to comply with the time periods

- 27 -

deprives the trial court of subject-matter jurisdiction. When a party fails to object at the hearing that the time periods of the Act were exceeded, parties have been found to have forfeited the issue. See In re John Paul J., 343 Ill. App. 3d 865, 874, 877-78, 799 N.E.2d 769, 776, 779 (2003) (failure to conduct a temporary custody hearing under section 2-9(3) of the Act within 48 hours did not deprive the trial court of jurisdiction; failure to conduct adjudicatory hearing within 90 days under section 2-14 forfeited when petitioner failed to file motion to dismiss petition for adjudication); In re S.W., 342 Ill. App. 3d 445, 452, 794 N.E.2d 1037,1042-43 (2003) (petitioner waived the time requirements of section 2-14 by failing to file motion to dismiss in circuit court).

Respondent argues the mandatory construction the supreme court gave the provisions of section 2-14(b) of the Act in S.G. controls this court's finding. However, S.G is distinguishable from the case sub judice: at the time, section 2-14 mandated dismissal of the petition without prejudice if the adjudicatory hearing was not held within the time limits required by subsection (b) or (c) of the section. The legislature did not include in section 2-22(4), like it did in section 2-14(b), a provision requiring dismissal of the petition. This evidences legislative intent that the language of section 2-22(4) be read as directory. See O.H., 329 Ill. App. 3d at 260, 768 N.E.2d at

803.

Section 2-22(4) of the Act does not contain any language identifying a penalty for failure to comply with the six-month time period. Because section 2-14 contains language requiring dismissal without prejudice of the petition for failure to comply with the limits, the legislature's failure to include the dismissal language in section 2-22 appears to be a deliberate exclusion. "The inclusion of one is the exclusion of another, a generally accepted canon of construction, construes the express inclusion of a provision in one part of a statute and its omission in a parallel section as an intentional exclusion from the latter." (Emphasis in original.) O.H., 329 Ill. App. 3d at 260, 768 N.E.2d at 803, citing Schanowitz v. State Farm Mutual Automobile Insurance Co., 299 Ill. App. 3d 843, 848, 702 N.E.2d 629, 633 (1998).

In S.G., dismissal of the petition was without prejudice. S.G., 175 Ill. 2d at 493, 677 N.E.2d at 930. When the State failed to comply with the statute, all the State had to do was refile the juvenile court petition. Subject-matter jurisdiction serves to restrict judicial authority over the type of claims the circuit court may adjudicate. Financial Freedom v. Kirgis, 377 Ill. App. 3d 107, 128, 877 N.E.2d 24, 42 (2007) (common-law principle of denying subject-matter jurisdiction in suit filed against deceased person did not apply to an in rem

- 29 -

action).  "Subject[-]matter jurisdiction refers to a court's power to both adjudicate the general question involved and to grant the particular relief requested."  A.H., 195 Ill. 2d at 415, 748 N.E.2d at 188.  The fact that dismissal was without prejudice reflects that the court did not "lose" subject-matter jurisdiction when it failed to comply with the time limits of the Act, as the State could refile the petition.  If the court did not have subject-matter jurisdiction because of failure to comply with the Act, the dismissal would be with prejudice and the State would not be able to cure the jurisdictional defect merely by refiling its petition.  As the supreme court held in Graf, once the circuit court is presented with a controversy under the statute, the court has jurisdiction to hear the matter and to decide rightly or wrongly the issues before it.  See Graf, 206 Ill. 2d at 554, 795 N.E.2d at 288.

The dissent in S.G. expressed concern that the majority's literal interpretation of the Act would contribute to delay in resolving allegations of abuse and neglect and would not be in the best interests of the affected children.  S.G., 175 Ill. 2d at 493-94, 677 N.E.2d at 931 (McMorrow, J., dissenting).  The dissent stated the desire for prompt adjudication "must yield when necessary or desirable to the best interests of the children in a particular case."  S.G., 175 Ill. 2d at 496, 677 N.E.2d at 932 (McMorrow, J., dissenting).  While prompt adjudication was

clearly the purpose behind the 90-day time limitation of section 2-14, Justice McMorrow stated that a quick resolution of adjudicatory hearings was not always consistent with the legislature's overall intent of safeguarding children. S.G., 175 Ill. 2d at 496, 677 N.E.2d at 932 (McMorrow, J., dissenting). The dissent expressed fear that parties may be willfully dilatory. S.G., 175 Ill. 2d at 499-500, 677 N.E.2d at 933 (McMorrow, J., dissenting). The dissent suggested the legislature amend the Act. S.G., 175 Ill. 2d at 502-03, 677 N.E.2d at 935 (McMorrow, J., dissenting).

Thereafter, the legislature amended section 2-14(b), changing the requirement that the hearing be "held" within 90 days to "commenced" within 90 days. Pub. Act 90-456, §10, eff. January 1, 1998 (1997 Ill. Laws 5159, 5160). Additional language was also added to the subsection, providing: "Once commenced, subsequent delay in the proceedings may be allowed by the court when necessary to ensure a fair hearing." Pub. Act 90-456, §10, eff. January 1, 1998 (1997 Ill. Laws 5159, 5160). This change also evidences a legislative intent that the Act's time periods not be read as mandatory, as the amendment specifically recognized the need for flexible time periods when necessary to ensure fairness.

As discussed by this court in In re D.E., 314 Ill. App. 3d 764, 731 N.E.2d 1282 (2000), the legislative changes brought

by Public Act 90-456 reflected the legislature's understanding of the difficulty courts face in expeditiously resolving juvenile cases while ensuring fairness and full development of the facts. This court stated:

> "It is clear the legislature intended[] not slavish adherence to an arbitrarily fixed period of time, but concern for the overall purpose of the [Act]. It should not be forgotten that the statute's statement of purpose and policy itself, section 2-14(a), speaks not just in terms of speedy adjudication but 'just and speedy' adjudication. The legislature is also apparently willing to entrust the courts to proceed with, in the words of the S.G. majority, 'a technical start of the hearing followed by an indeterminate period of delay' [citation], so long as such delay is necessary to ensure a fair hearing." D.E., 314 Ill. App. 3d at 770, 731 N.E.2d at 1286.

In D.E., this court held that the time periods of section 2-14 were tolled when a substitution of judge was requested by a party. D.E., 314 Ill. App. 3d at 770, 731 N.E.2d at 1286-87. Tolling gave "deference both to concerns for the just and speedy

administration of justice and the fundamental fairness of the proceedings." D.E., 314 Ill. App. 3d at 770-71, 731 N.E.2d at 1287. If the time periods were not tolled, trial courts would be required to dismiss petitions:

> "Respondent parents would be empowered to unilaterally compel the dismissal of neglect petitions by lying in the weeds until, as in this case, waiting until the last possible moment to raise the issue." D.E., 314 Ill. App. 3d at 771, 731 N.E.2d at 1287.

In light of the Belleville Toyota cases, when the legislature sets time limitations in the Act and a circuit court fails to comply with those limitations, the judgment is not void, but the judgment is potentially voidable. As this court noted in C.S., the trial court does not lose its constitutionally conferred subject-matter jurisdiction but, instead, may proceed in error. However, neither can the cases be read so broadly to the contrary to suggest that courts may ignore the restrictions imposed by the legislature, as clearly the intent is to expedite juvenile cases so as to ensure that children are not in legal limbo for indefinite periods of time. Courts may not ignore or reject the intent of the Act. As this court recognized in D.E., tolling the Act's time limitations gives deference to the concerns for the just and speedy administration of justice as well

as the fundamental fairness of the proceedings.

Regardless, in the case sub judice, respondent cannot now complain of delays she herself supported and to which she agreed. John was taken into custody on February 13, 2007, and a shelter-care order was issued February 14, 2007. At a pretrial hearing on March 15, 2007, respondent waived the requirement that the adjudicatory hearing be held within 90 days of John being taken into custody. As the respondent agreed to waive the requirement, the six-month time period of section 2-22(4) was tolled as of March 15. At the adjudicatory hearing on August 2, 2007, respondent agreed to waive the 30-day time period of section 2-21(2) in which to hold the dispositional hearing, continuing the tolling of the Act. By agreement of the parties, the dispositional hearing was set for September 12, 2007. As there is no explanation as to why the hearing date was changed from September 12 to November 13, 2007, or whether respondent opposed such continuance, the court will presume respondent was in agreement with the continuance. The time period to hold the dispositional hearing began running on November 13, 2007. As respondent agreed to toll the proceedings from March 15, 2007, through November 13, 2007, the trial court held the dispositional hearing in compliance with the time limits of section 2-22(4). The order was therefore neither void nor voidable.

B. The Trial Court's Dispositional Findings Were
   Not Against Manifest Weight of the Evidence

### 1. Unfitness Finding Against Respondent Mother Was Not Against Manifest Weight

The State must prove parental unfitness by clear and convincing evidence, and the trial court's findings must be given great deference because of its superior opportunity to observe the witnesses and evaluate their credibility. In re D.F., 201 Ill. 2d 476, 498, 777 N.E.2d 930, 942-43 (2002). A trial court's finding of parental unfitness will not be reversed unless it is contrary to the manifest weight of the evidence, meaning that the correctness of the opposite conclusion is clearly evident from a review of the record. D.F., 201 Ill. 2d at 498, 777 N.E.2d at 942; In re C.N., 196 Ill. 2d 181, 208, 752 N.E.2d 1030, 1045 (2001). A reviewing court cannot substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn. D.F., 201 Ill. 2d at 499, 777 N.E.2d at 943.

Respondent argues that the trial court's findings of fact at the dispositional hearing were against the manifest weight of the evidence. In its order, the court found respondent unfit. The order stated that respondent made little progress in counseling and had shown "an inability to refrain from abusive relationships; mom has still not offered any reasonable explanation as to how the minor received extensive head injuries while in her custody."

The trial court could reasonably conclude respondent

failed to incorporate the teachings of her service plan into her life.  Dr. Eckert cautioned that significant improvement was necessary before respondent would be able to parent in a reliable, predictive, and competent manner.  The court concluded that respondent's unhealthy relationships with men were not momentary lapses of parental judgment but were symptomatic of a more profound problem that impaired respondent's performance of her parental duties.  Under the applicable standard of review, the trial court's unfitness finding was not against the manifest weight of the evidence.

### 2. Fitness Finding of Respondent Father Was Not Against Manifest Weight

Respondent also alleges the trial court erred in finding Carter fit.  Again, the trial court's determination will be reversed only if the findings are against the manifest weight of the evidence.  D.F., 201 Ill. 2d at 498, 777 N.E.2d at 942; C.N., 196 Ill. 2d at 208, 752 N.E.2d at 1045.

The dispositional report showed Carter successfully completed all of his service-plan goals.  The report also indicated that John had adjusted to living with his father and was doing well in his care.  In the course of her assessment and treatment, respondent identified Carter as having physically and mentally abused her.  Respondent takes issue with the fact that DCFS failed to follow up and require Carter to undergo any assessment or treatment for anger management or domestic vio-

lence.  Respondent also questioned whether Carter followed through on recommendations for counseling and to attend alcohol and drug recovery programs after the completion of his outpatient treatment program.

While it may have been appropriate for DCFS to follow up on respondent's concerns about Carter, the trial court considered the dispositional and psychological reports in making its fitness finding.  This court cannot substitute its judgment for that of the trial court unless the correctness of the opposite conclusion is clearly evident.  D.F., 201 Ill. 2d at 498, 777 N.E.2d at 942; C.N., 196 Ill. 2d at 208, 752 N.E.2d at 1045.  The fact that he was fit was supported by substantial evidence.  The court's determination that Carter was fit was not against the manifest weight of the evidence.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK and TURNER, JJ., concur.